UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS A. RICHARDS,

                              Plaintiff,

                                                        9:04-CV-1433
v.                                                      (LEK/GHL)

GLENN S. GOORD; JOHN H. NUTTALL,
Deputy Commission for Programs;
LESTER WRIGHT, M.D., M.P.S.;
DWIGHT E. BRADFORD, Director of
Substance Abuse Treatment Services;
JAMES NICHOLS, Deputy Superintendent for
Programs; ANNE BYERWALTERS, Senior
Correction Counselor and Temporary Release
Committee Chairperson, a/k/a Anne Joslyn;
KAREN PHILLIPS, Senior Correctional and
Program Committee Chairperson; LARRY ZICK,
Correction Counselor and Program Committee
Member; and NEW YORK STATE D.O.C.S.,

                              Defendants.

_____

APPEARANCES:                                  OF COUNSEL:

THOMAS A. RICHARDS, 96-A-6044
  Plaintiff, *Pro Se*
Oneida Correctional Facility
P.O. Box 4580
Rome, NY 13442

HON. ELIOT L. SPITZER                         CHARLES J. QUACKENBUSH, ESQ.
Attorney General of the State of New York     Assistant Attorney General
  Counsel for Defendants
The Capitol
Syracuse, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

This action has been referred to me for Report and Recommendation by the Honorable

Lawrence E. Kahn, United States District Judge, pursuant to Local Rule 72.3(c) and 28 U.S.C. §

636(b).  Thomas A. Richards ("Plaintiff") commenced this *pro se* civil rights action pursuant to

42 U.S.C. § 1983 against eight employees of the New York State Department of Correctional

Services ("DOCS"), as well as against DOCS itself (collectively "Defendants").  (Dkt. No. 1.)

Currently before the Court is Defendants' motion for judgment on the pleadings pursuant to Fed.

R. Civ. P. 12(c).  (Dkt. No. 27.)  For the reasons that follow, I recommend that Defendants'

motion be granted.

I.      BACKGROUND

        A.      Allegations of Plaintiff's Complaint

Liberally construed, Plaintiff's *pro se* Complaint sets forth four causes of action, each of

which asserts claims against different groups of Defendants.

Plaintiff's **First Cause of Action** asserts two claims under the **First Amendment**–a "free

exercise" claim and a retaliation claim.[1]  With respect to his **"free exercise" claim**, Plaintiff

alleges that **Defendants Nichols, Bryerwalters, Nuttall, Goord, and Bradford** infringed on his

religious beliefs when, between May and July of 2004, they ignored or denied his written

requests to be excused from having to participate in an Alcohol and Substance Abuse Treatment

("ASAT") Program at Mid-State C.F. because that Program (allegedly) prohibited any religious

---

[1]      (Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl.].)

discussion or mention of God.[2]  With respect to his **retaliation claim**, Plaintiff alleges that **all eight of the individual Defendants** retaliated against him--in response to his expression of his religious beliefs and/or his filing of grievances or complaints--when they (1) removed him from his assignment in the Mid-State C.F. Food Service Program in July of 2004, (2) denied him medical treatment for his Hepatitis C condition, and/or (3) harassed him by (a) transferring him from a "medium security" residence at Mid-State C.F. to a "minimum security" residence at Mid-State C.F. in July of 2004 (which precluded him from participating in the Food Service Program),  (b) wrongfully denying him a transfer back to the Food Service Program, (c) wrongfully placing him in protective custody by filing false reports that Plaintiff's life was in danger (posed by other inmates) in August and September of 2004, and/or (d) transferring him to five different dormitories within a thirty-day period between August and September of 2004.[3]

In addition, Plaintiff's **First Cause of Action** asserts a substantive due process claim under the **Fourteenth Amendment**.[4]  Specifically, Plaintiff alleges that Defendants deprived Plaintiff of his right to be offered an ASAT Program (or other DOCS drug/alcohol rehabilitation program) that involved religious teachings.[5]

---

[2]        (Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl.]; Dkt. No. 28, ¶¶ 16, 17, 27 [Plf.'s Opp. Mem., alleging that Defendants infringed on Plaintiff's constitutional right to "freedom of expression"].)

[3]        (Dkt. No. 1, Part IV, "Claim # 1," "Claim # 2," "Claim # 4" [Plf.'s Compl.]; Dkt. No. 28, ¶¶ 10-16, 18, 21, 26 [Plf.'s Opp. Mem., alleging that he was transferred and placed in S.H.U. as a result of his exercising his First Amendment right to file grievances].)

[4]        (Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl.]; Dkt. No. 28, ¶ 7 [Plf.'s Opp. Mem., alleging that a New York State Court of Appeals case required DOCS to "offer other ALTERNATIVE PROGRAMS FOR BELIEVERS"].)

[5]        (*Id.*)

Plaintiff's **Second Cause of Action** alleges that **Defendants Wright and Goord** were deliberately indifferent to his serious medical needs under the **Eighth Amendment**.[6]  More specifically, Plaintiff alleges that (1), at some point before July of 2004, he was diagnosed with Hepatitis C, (2) certain unidentified employees of Mid-State C.F. refused to treat his condition, (3) on more than one occasion (including on or about July 20, 2004), Plaintiff wrote to Defendant Wright, informing him of the lack of treatment and requesting help, (4) Defendant Wright ignored Plaintiff's letter(s), (5) on or about November 10, 2004, Plaintiff wrote to Defendant Goord, informing him of the lack of treatment and requesting help, and (6) Defendant Wright ignored Plaintiff's letter of November 10, 2004.[7]

Plaintiff's **Third Cause of Action** alleges that **Defendant Byerwalters** interfered with his "statutory right" to temporary release, depriving him of due process and equal protection under the **Fourteenth Amendment**.[8]  More specifically, Plaintiff alleges that (1), in August of 2004, he appeared before Defendant Byerwalters and the Temporary Release Committee, (2) Defendant Byerwalters and the Temporary Release Committee refused to consider Plaintiff for temporary release because of his failure to participate in the ASAT Program, and (3) the decision of Defendant Byerwalters and the Temporary Release Committee was arbitrary and capricious considering that he was, at the time, classified as a "minimum security" risk and afforded clearance to work outside the prison.[9]

---

[6]    (Dkt. No. 1, Part IV, "Claim # 2" [Plf.'s Compl.].)

[7]    (*Id*.)

[8]    (Dkt. No. 1, Part IV, "Claim # 2" [Plf.'s Compl.].)

[9]    (*Id*.)

Plaintiff's **Fourth Cause of Action** alleges that **Defendants Zick, Phillips, Byerwalters, and Nichols** harassed Plaintiff and/or imposed on him cruel and unusual conditions of confinement in violation of the **Eighth and/or Fourteenth Amendments** by (1) removing him from his assignment in the Mid-State C.F. Food Service Program in July of 2004, and failing to subsequently return him to that assignment, (2) transferring him from a "medium security" part of Mid-State C.F. to a "minimum security" part of Mid-State C.F. in July of 2004 (which precluded him from participating in a rehabilitative program), (3) placing him in voluntary protective custody following reports that his life was in danger (posed by other inmates) in August and September of 2004, and/or (4) transferring him to five different dormitories within a thirty-day period in August and September of 2004 in large part due to (a) his placement in protective custody or (b) a possible opportunity for him to complete the ASAT Program through self-study.[10]

### B.   Defendants' Motion and Plaintiff's Response

Generally, Defendants' motion sets forth six arguments in favor of dismissal of Plaintiff's Complaint.  Liberally construed, Plaintiff's opposition papers respond to each of these arguments in varying degrees.  The following is a brief summary of Defendants' six arguments, and Plaintiff's responses.

First, Defendants argue that all of Plaintiff's claims should be dismissed because he has failed to allege the personal involvement of any Defendant in the alleged constitutional deprivations.[11]  Plaintiff responds that he has alleged the personal involvement of each Defendant

---

[10]   (Dkt. No. 1, Part IV, "Claim # 4" [Plf.'s Compl.].)

[11]   (Dkt. No. 27, Part 2, 3-8 [Defs.' Mem. of Law].)

in the alleged constitutional deprivations because he has alleged that he wrote letters to each Defendant about the alleged constitutional deprivations and those Defendants refused to take action.[12]

Second, Defendants argue that Plaintiff's First Cause of Action (asserting a retaliation claim and a substantive due process claim) should be dismissed because (1) with respect to Plaintiff's retaliation claim, Plaintiff has not alleged facts indicating that any adverse action taken against him was taken as a result of his exercising a right protected by the First Amendment, and (2) with respect to Plaintiff's substantive due process claim, Plaintiff did not have a fundamental right to a taxpayer-funded substance abuse rehabilitation program (much less the program of his choice), nor has Plaintiff alleged any facts demonstrating that Defendants have arbitrarily deprived him of access to a religion-based rehabilitation program.[13]  Plaintiff responds with a variety of arguments, the strongest (and clearest) of which are that (1) his factual allegations "might" be stated in more detail when one considers the exhibits initially omitted by Plaintiff but provided by Defendants in their motion papers, and (2) Plaintiff is alleging that Defendants retaliated against him not simply by removing him from his job in the mess hall but by harassing him in the ways described in Plaintiff's Fourth Cause of Action.[14]

Third, Defendants argue that Plaintiff's Second Cause of Action (asserting a claim of deliberate indifference to a serious medical need) should be dismissed because, even assuming

---

[12]   (Dkt. No. 28, ¶¶ 2, 4, 5.)

[13]   (Dkt. No. 27, Part 2, 8-12 [Defs.' Mem. of Law].)

[14]   (Dkt. No. 28, ¶¶ 9-18.)  Plaintiff's assertion that the documents provided by Defendants "might" serve to save Plaintiff's otherwise insufficient claims is contained in Paragraph 9 of his Opposition Memorandum.  (Dkt. No. 28, ¶ 9.)

6

that Hepatitis C is a "serious medical need" for purposes of the Eighth Amendment, Plaintiff has

not alleged any facts indicating that any Defendant was deliberately indifferent to that serious

medical need.[15]  Plaintiff responds that he has alleged facts indicating that Defendants were

deliberately indifferent to that serious medical need because, in addition to alleging that he sent

letters to Defendants about his lack of medical care, Plaintiff alleges that he filed grievances

about that lack of medical care over a four-year period, the denial of which (Plaintiff presumably

alleges) indicates a certain recklessness by Defendants.[16]

Fourth, Defendants argue that Plaintiff's Third Cause of Action (asserting a due process

and equal protection claim with regard to the denial of Plaintiff's "statutory" right to temporary

release) should be dismissed because, as a matter of law, Plaintiff has no enforceable liberty

interest in a temporary release under either the Due Process Clause or Equal Protection Clause of

the Fourteenth Amendment.[17]  Plaintiff concedes the merit of Defendants' argument and

withdraws his Third Cause of Action.[18]

Fifth, Defendants argue that Plaintiff's Fourth Cause of Action (asserting a harassment

claim) should be dismissed because Plaintiff has not alleged any facts indicating that he suffered

any physical injury as a result of the alleged harassment, which is required by the Prison

Litigation Reform Act ("PLRA").[19]  Plaintiff appears to acknowledge the merit of Defendants'

---

[15]        (Dkt. No. 27, Part 2, 12-14 [Defs.' Mem. of Law].)

[16]        (Dkt. No. 28, ¶¶ 6-8.)

[17]        (Dkt. No. 27, Part 2, 14 [Defs.' Mem. of Law].)

[18]        (Dkt. No. 28, ¶ 20.)

[19]        (Dkt. No. 27, Part 2, 14 [Defs.' Mem. of Law].)

argument that the PLRA requires claims of harassment to allege some kind of physical injury; however, he says that Defendants have misconstrued his Fourth Cause of Action as alleging harassment, when in fact that cause of action was intended to allege retaliation.[20]

Sixth, Defendants argue that all of Plaintiff's claims should be dismissed because, as a matter of law, each Defendant is protected by the doctrine of qualified immunity.[21]  Plaintiff responds that Defendants are not protected by qualified immunity because (1) the constitutional rights he is claiming were indeed "clearly established" at the time in question, and (2) a reasonable person would have known he was violating such clearly established rights.[22]

## II.   STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "After the pleadings are closed . . . any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)."[23]

A defendant may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To prevail on a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon

---

[20]      (Dkt. No. 28, ¶¶ 10, 21.)

[21]      (Dkt. No. 27, Part 2, 15 [Defs.' Mem. of Law].)

[22]      (Dkt. No. 28, ¶¶ 23-26.)

[23]      *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816 (1994) (citations omitted); *accord*, *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.").

which relief can be granted," a defendant must show "beyond doubt that the plaintiff can prove

no set of facts in support of his claim [that] would entitle him to relief,"[24] or the defendant must

show that the plaintiff's claim "fails as a matter of law."[25]  Thus, a defendant may base a Rule

12(b)(6) motion on either or both of two grounds: (1) a challenge to the "sufficiency of the

pleading" under Rule 8(a)(2);[26] or (2) a challenge to the legal cognizability of the claim.[27]

---

[24]     *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted); *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (internal quotations and citation omitted).

[25]     *Phelps v. Kapnolis*, 308 F.3d 180, 187 (2d Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 108, n.16 [1976].)

[26]     *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[27]     *See Swierkiewicz* 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . .  In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 2005 U.S. Dist. LEXIS 6686 (S.D.N.Y. Apr. 20, 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") (citation

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[28] it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[29] The purpose of this rule is to "facilitate a proper decision on the merits."[30] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[31]

---

omitted); *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[28]     *See Swierkiewicz*, 534 U.S. at 511-512, 515.

[29]     *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[30]     *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Conley*, 355 U.S. at 48).

[31]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002) (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake."). However, even this liberal notice pleading standard "has its limits."[32]

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[33] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[34] Indeed, "courts must

---

[32]    2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003); *see, e.g., Dura Pharmaceuticals*, 125 S. Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*. *See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[33]    *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[34]    *Hernandez*, 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citations omitted); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (citation omitted).

11

construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[35]

Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[36]  However, "all normal rules of pleading are not absolutely suspended."[37]  For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[38]

Finally, as with a Rule 12(b)(6) motion, Rule 12(c) motions are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings.[39]  Having said that, it should be emphasized that, on a

---

[35]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[36]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").  Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.

[37]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980) (citations omitted), *accord, Gil v. Vogilano*, 131 F. Supp.2d 486, 491 (S.D.N.Y. 2001).

[38]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

[39]     *See* Fed. R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be

12

motion to dismiss, the court may, without converting the motion to dismiss into a motion for

summary judgment, consider (1) any documents relied on and/or referenced in the complaint

(even if those documents are not attached to the complaint, if those documents are provided by

defendants in their motion to dismiss),[40] and (2) any documents provided by the plaintiff in

opposition to defendants' motion to dismiss, to the extent those documents are consistent with

the allegations in the complaint.[41]

---

given reasonable opportunity to present all material made pertinent to such a motion by Rule
56.").

[40]     *See Chambers v. Time Warner*, 282 F.3d 147, 153 & n.3 (2d Cir. 2002) (district
court's consideration of certain contracts attached to defendant's motion to dismiss was
appropriate where plaintiff relied on documents in drafting his complaint) [collecting cases];
*Levy v. Southbrook Int'l Invest., Ltd.*, 263, F.3d 10, 13, n.3 (2d Cir. 2001) (noting that "it was
appropriate for the district court to refer to documents attached to the motion to dismiss since the
documents were referred to in the complaint") [citation omitted]; *San LeandroEmergency Med.
Group v. Philip Morris Co., Inc.*, 75 F.3d 801, 808 (2d Cir. 1996) (a document that is "intergral"
to the complaint may be considered by the district court on a motion to dismiss "despite the fact
that the complaint only contains limited quotations from that document") [collecting cases];
*Harsco Corp. v. Segui*, 91 F.3d 337, 341, n.1 (2d Cir. 1996) ("This letter, though cited to and
described in the complaint, was not attached to the complaint.  We may nonetheless review the
letter in its entirety [in deciding defendants' motion to dismiss].") [citation omitted]; *Cortec
Indus., Inc. v. Sum Holding LP*, 949 F.2d 42, 48 (2d Cir. 1991) ("When plaintiff has actual notice
of all the information in the movant's papers and has relied upon these documents in framing the
complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely
dissipated."); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762
(2d Cir. 1991) ("We . . . decline to close our eyes to the contents of the prospectus and to create a
rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff
has chosen not to attach the prospectus to the complaint or to incorporate it by reference.")
[citations omitted].

[41]     "Generally, a court may not look outside the pleadings when reviewing a Rule
12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants
generously makes it appropriate to consider plaintiff's additional materials, such as his
opposition memorandum."  *Gadson v. Goord*, 96 Civ. 7544, 1997 WL 714878, *1, n. 2
(S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987]
[considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases
where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to

### III.   ANALYSIS

Applying the arguments raised in Defendants' motion papers and Plaintiff's response papers to the claims asserted in Plaintiff's Complaint (as amended by the documents relied on and/or referenced in that Complaint), I find that the following seven issues are raised in Defendants' motion to dismiss: (1) whether Plaintiff has stated either a "free exercise" claim or a retaliation claim under the First Amendment; (2) whether Plaintiff has stated a substantive due process claim under the Fourteenth Amendment with regard to his access to a religious ASAT Program; (3) whether Plaintiff has stated a claim for deliberate indifference to serious medical need under the Eighth Amendment; (4) whether Plaintiff has stated a claim for interference with his right to temporary release under the Fourteenth Amendment; (5) whether Plaintiff has stated a claim for harassment and/or cruel and unusual prison conditions under the Eighth and/or Fourteenth Amendments; (6) whether Plaintiff has sufficiently alleged the personal involvement of Defendants for purposes of 42 U.S.C. § 1983; and (7) whether Defendants are protected by qualified immunity as a matter of law.[42]

_____

consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'" *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).

[42]   This Report-Recommendation addresses the merit of two claims that were asserted in Plaintiff's Complaint (as I liberally construe that Complaint) but that were not expressly discussed by Defendants in their motion papers.  Specifically, Defendants' motion does not discuss the merits of (1) Plaintiff's "free exercise" claim in his First Cause of Action and (2) Plaintiff's cruel and unusual prison conditions claim in his Fourth Cause of Action.  (I note that the reason that Defendants' motion does not discuss these claims is simply that the motion was obviously filed before Plaintiff's response papers; and I have liberally construed Plaintiff's response papers as essentially amending Plaintiff's Complaint so as to assert a "free exercise" claim and a cruel and unusual prison conditions claim.)  In any event, the Court is permitted to address the legal sufficiency of these two claims *sua sponte* (i.e., without Defendants having

**A.  Whether Plaintiff Has Stated Either a "Free Exercise" Claim or a Retaliation Claim Under the First Amendment**

Generally, First Amendment claims by inmates regarding the practice of religion may be broken down into two types of claims–a claim that a defendant's conduct infringed on the inmate's religious practices or beliefs (thus violating either the "Free Exercise Clause" or the "Establishment Clause"), and/or a claim that the defendant retaliated against a plaintiff for practicing his religion (called a "retaliation claim").

**1.  Free-Exercise Claim**

"Prisoners retain their right to religious freedom [under the First Amendment] even when incarcerated . . . [and are] therefore entitled to a reasonable accommodation of [their] religious beliefs."[43]  Generally, "[t]o assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the [prisoner's] scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged conduct of prison officials infringes upon the religious belief; and (3) whether the challenged conduct of the prison officials furthers some legitimate penological objective."[44]  The reason for the third consideration is the fact that the right of a

---

moved for dismissal with regard to those two claims).  *See* 28 U.S.C. § 1915(e)(2)(B) ("[T]he Court . . . shall dismiss at any time if the Court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . or . . . seeks monetary relief against a defendant who is immune from such relief."); Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action.").

[43]     *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).

[44]     *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988); *see also, Ford v. McGinnis*, 352 F.3d 582, 588-596 (2d Cir. 2003) (not deciding question of whether "substantial burden" requirement is contained among elements of First Amendment free-exercise claim); *accord, McEachin v. McGinnis*, 357 F.3d 197, 203 (2d Cir. 2004); *Shakur v. Selsky*, 319 F.3d 106, 120 (2d Cir. 2004).

prisoner to exercise his religion is balanced against "the interest of prison officials charged with the complex duties arising from administration of the penal system."[45]

Here, Plaintiff alleges that (1) he was required to participate in the ASAT Program at Mid-State C.F., which prohibited any religious discussion or mention of God, (2) this prohibition "offended [Plaintiff's] freedom of expression and [religious] belief," and (3) between May and July of 2004, Defendants Nichols, Bryerwalters, Nuttall, Goord, and Bradford ignored or denied his written requests to be excused from having to participate in the ASAT Program.[46]

The main problem with Plaintiff's "free exercise" claim is that he fails to assert any non-conclusory factual allegations indicating the challenged conduct actually infringed upon his religious practices or beliefs.  More specifically, as the U.S. District Court for the Northern District of New York found in an analogous case, Plaintiff has "failed to set forth one belief forbidden or required by his religion, much less one that is adversely affected by governmental compulsion."[47]  For example, Plaintiff does not allege that the challenged conduct prevented him from (1) attending religious services, (2) having access to clergy and/or religious materials, (3)

---

[45]      *Ford*, 352 F.3d at 588; *Burgess v. Friedmann*, 05-CV-0379, 2005 U.S. Dist. LEXIS 38423, at *7-8 (N.D.N.Y. Dec. 22, 2005) (Mordue, J.); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987); *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995); *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995); *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989); *Farid*, 850 F.2d at 925.

[46]      (Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl.]; Dkt. No. 28, ¶¶ 16, 17, 27 [Plf.'s Opp. Mem., alleging that Defendants infringed on Plaintiff's constitutional right to "freedom of expression"].)

[47]      *Boyd v. Coughlin*, 914 F. Supp. 828, 834 (N.D.N.Y. 1996) (dismissing Muslim prisoner's First Amendment "free exercise" claim based on his mandatory participation in substance abuse treatment program that *did* incorporate a religious element, since he "failed to set forth one belief forbidden or required by his religion, much less one that is adversely affected by governmental compulsion").

16

possessing religious accoutrements, (4) observing a religious diet, (5) adopting a religious name, or (6) wearing religious attire and/or a religious hairstyle.[48]  I note that, even if Plaintiff did allege that he had been prevented from attending a few religious services, Courts within this Circuit have repeatedly held that such deprivations do not rise to the level of a First Amendment violation, as a matter of law.[49]

Rather, the deprivation that Plaintiff alleges is that he was not allowed to "express[] his religious views" or "recit[e] prayer[s]" during the ASAT Program meetings "as [is] done in the [Alcoholics Anonymous] 12 step recovery program."[50]  For the sake of argument, I will set aside the fact that Plaintiff has asserted absolutely no factual allegations (only conclusory allegations)

---

[48]     (*See generally* Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl.]; Dkt. No. 28, ¶¶ 16, 17, 27 [Plf.'s Opp. Mem.].)

[49]     *See, e.g.*, *Persad v. Savage*, 02-CV-0336, 2004 WL 1570286, at *7 (W.D.N.Y. May 25, 2004) (report-recommendation by magistrate judge, observing that there was "no clear statement of law" from the Supreme Court or the Second Circuit that an inmate's right to practice the Islamic religion would be substantially burdened by his inability to attend two weekly religious services), *adopted*, 2004 WL 1858140 (W.D.N.Y. Aug. 19, 2004); *Cancel v. Mazzuca*, 205 F. Supp.2d 128, 142 (S.D.N.Y. March 22, 2002) (granting defendant's motion to dismiss in part because inmate's right to practice Islamic religion was not substantially burdened by his inability to attend one weekly religious service); *Gill v. DeFrank*, 98-CV-7851, 2000 WL 897152, at *1-2 (S.D.N.Y. July 6, 2000) (inmate's right to practice Jehovah's Witness religion was not substantially burdened by his inability to attend one weekly religious service), *aff'd*, 8 Fed. Appx. 35 (2d Cir. 2001) (unpublished decision); *Troy v. Kuhlmann*, 96-CV-7190, 1999 WL 825622, at *14-15 (S.D.N.Y. Oct. 15, 1999) (inmate's right to practice Islamic religion was not substantially burdened by his inability to attend one weekly religious service); *Boomer v. Irvin*, 963 F. Supp. 227, 230-231 (W.D.N.Y. 1997) (inmate's right to practice Islamic religion was not substantially burdened by his inability to attend one weekly religious service).

[50]     (Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl., alleging that "plaintiff believes that it is illegal to punish or impose[] disciplinary sanctions against a program participant for expressing his religious views, or reciting prayer during a meeting (as [is] done in the A.A. 12 step recovery program). . . .  Respondent(s) have unnecessarily overhauled an entire program . . . to exclude religion, God and[] prohibit religious discussion and prayer while in the program."

indicating that he was indeed not able to mention God *at all* during the meetings.[51]  Rather, the

crux of the flaw with Plaintiff's claim is that it acknowledges that Plaintiff was required to

participate in a *substance-abuse program* (not a religious program), and it asserts a right to

transform that secular program into a religious program (or even a "prayer recit[al]").[52]  Stated

very simply, such a claim is not a First Amendment "free exercise" claim (or an "Establishment

Clause" claim), but something akin to a substantive due process claim.[53]  Under the

circumstances, for the ASAT Program to have infringed on Plaintiff's religious practices or

beliefs, the ASAT Program would have had to contain a *religious element*.[54]  This is precisely

---

[51]      (*See* Dkt. No. 28 [Plf.'s Opp. Mem., attaching Defendant Nichols' handwritten note to Plaintiff, which stated, "I believe you are mistaken.  We can not force you to use the 12 steps.  We do not prevent you from doing so."]; Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl., alleging conclusorily that "violation of this rule[] invariably results in disciplinary action," but not specifically alleging how the "violation" occurred; alleging that the ASAT Program "shelve[d] God," and prohibited participants from "expressing his religious views" or "reciting prayer[s]" during the meetings, not specifically alleging that the Program prohibited participants from mentioning God, or specifically when the prohibition occurred; and alleging that the ASAT Program "exclude[d] religion, God and[] prohibit[ed] religious discussion and prayer while in the program," but not specifically alleging that the Program prohibited participants from mentioning God, or specifically when the prohibition occurred]; Dkt. No. 28, ¶ 14 [Plf.'s Opp. Mem., referencing Plaintiff's letter to Daniel Lutz dated August 9, 2004–which is attached to Defendants' motion papers at Dkt. No. 27, Part 4, at 12–which alleged merely that the ASAT Program "is virtually mandating that I[] shelve God while participating in the program"].)

[52]      (*See generally* Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl.]; Dkt. No. 28, ¶¶ 16, 17, 27 [Plf.'s Opp. Mem.].)

[53]      *See*, *infra*, Parts III.A.2. and III.B. of this Report-Recommendation.

[54]      *Compare Warner v. Orange County Dep't of Prob.*, 115 F.3d 1068, 1074-1076 (2d Cir. 1997) (violation of Establishment Clause of First Amendment where county probation department required probationer to attend ASAT Program meetings that contained religious content) *and Griffin v. Coughlin*, 649 N.Y.S.2d 903, 906-914 (N.Y. 1996) (violation of Establishment Clause of First Amendment where prison required prisoner to attend ASAT Program meetings that contained religious content) *with Kreuter v. Reuter*, 01-CV-5229, 2002 WL 31946715, at *8-9 (E.D.N.Y. Dec. 5, 2002) (*no violation* of Establishment Clause of First

what the ASAT Program is alleged to have been missing.[55]

Because Defendants did not specifically address Plaintiff's "free exercise" claim in their memorandum of law, I do not possess enough information to address the alternative issue of whether the challenged conduct furthers some legitimate penological objective, nor am I certain that I would even be able to do so without converting Defendants' motion to dismiss into a motion for summary judgment. I would only note that it would be easy for me to conceive of such an objective: (1) the ability to swiftly rehabilitate prisoners who are in need of substance abuse treatment by focusing on substance abuse issues, rather than prolonging the length of the group meetings so as to cover other issues such as religious issues, (2) the ability to avoid heated religious disputes between inmates (who are addicted to alcohol and/or drugs) in group meetings that are designed to require a certain amount of cooperation, and (3) the ability to offer only one type of program (i.e., a secular program) rather than several types of programs (i.e., a secular program in conjunction with several religious programs each tailored to a particular religion) in order to preserve scarce prison resources (especially since such a policy might have a ripple effect on the providing of other prison programs), etc.

Finally, a few words deserve mentioning about Defendants' alternative argument that Plaintiff has failed to sufficiently allege the personal involvement of Defendants Nichols, Bryerwalters, Nuttall, Goord, and Bradford in the alleged constitutional deprivation.[56] A

---

Amendment where actions of councillors in mandatory Alcoholics Anonymous meeting were *not religious in nature*).

[55]     (*See generally* Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl.]; Dkt. No. 28, ¶¶ 16, 17, 27 [Plf.'s Opp. Mem.].)

[56]     (Dkt. No. 27, Part 2, 3-8 [Defs.' Mem. of Law].)

defendant's personal involvement in alleged unlawful conduct is a prerequisite for a finding of

liability in a Section 1983 action.[57]  Supervisory officials (such as Defendants Nichols, Nuttall,

Goord and Bradford) are personally involved in a constitutional violation only if: (1) they directly

participated in that violation; (2) they failed to remedy that violation after learning of it through a

report or appeal; (3) they created, or allowed to continue, a policy or custom under which the

violation occurred; (4) they were grossly negligent in managing subordinates who caused the

violation; or (5) they exhibited deliberate indifference to the rights of inmates by failing to act on

information indicating that the violation was occurring.[58]

Here, Plaintiff alleges that Defendants Nichols, Bryerwalters, Nuttall, Goord, and

Bradford were personally involved in the alleged constitutional deprivation based on the

following conversations and/or communications between Plaintiff and Defendants regarding the

ASAT Program.[59]  On May 10, 2004, Plaintiff wrote to Defendant Nichols (a supervisor),

complaining about the ASAT Program (i.e., complaining that, because the ASAT Program was

non-secular in nature, Plaintiff believed that the Program was "deleterious to my overall

rehabilitation").[60]  On or about May 12, 2004, Defendant Nichols wrote back to Plaintiff, stating

(in pertinent part) that "I believe you are mistaken.  We can not force you to use the 12 steps [of

---

[57]     *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

[58]     *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

[59]     (Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl.]; Dkt. No. 28, ¶¶ 1, 4-5, 7 [Plf.'s Opp. Mem.].)

[60]     (Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl.]; Dkt. No. 28 [Plf.'s Opp. Mem., attaching letter as exhibit].)

20

the Alcoholics Anonymous Program, three of which involve referencing God]. We do not prevent you from doing so."[61] On May 21, 2004, Defendant Bryerwalters orally advised Plaintiff that "at this point in time the courts have directed the Department of Corrections that the inclusion of God and spirituality in the recovery process violates the rights of non-believers."[62] On May 25, 2004, Plaintiff wrote to Defendant Bryerwalters, reiterating his complaint about the ASAT Program.[63] On or about June 14, 2004, Defendant Bryerwalters responded, stating that the ASAT Program did not interfere with any religious beliefs since the Program did not contain a religious element.[64] Meanwhile, on June 4, 2004, Plaintiff wrote to Defendant Nuttall (a supervisor), complaining about the ASAT Program.[65] At some point, Defendant Nuttall (a supervisor) wrote back to Plaintiff, stating the ASAT Program did not interfere with any religious beliefs since the Program did not contain a religious element.[66] On July 2, 2004, Plaintiff wrote to Defendant Goord (a supervisor), complaining about the ASAT Program.[67] On July 7, 2004, Defendant Bradford wrote back to Plaintiff, in response to his letter to Defendant Goord; however, Defendant Bradford failed to address Plaintiff's complaint about the ASAT Program.[68]

---

[61]   (Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl.]; Dkt. No. 28 [Plf.'s Opp. Mem., attaching handwritten response to letter as exhibit].)

[62]   (Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl.].)

[63]   (*Id.*)

[64]   (*Id.*)

[65]   (*Id.*)

[66]   (*Id.*)

[67]   (*Id.*)

[68]   (*Id.*)

21

Because I have already concluded that adequate reason exists to dismiss Plaintiff's "free exercise" claim, I need not, and do not, reach the merits of this alternative argument other than to note that (1) I agree with Defendants that, based on the facts alleged, Defendant Goord was too far removed from the alleged deprivation to be personally involved in it, and (2) because Plaintiff has not attached copies of his alleged letters to and from Defendants Nuttall, Goord and Bradford, it would be difficult for him to persuade me that those letters were specific enough to indeed place those Defendants on notice of an actual constitutional deprivation (even if one were to assume that such a deprivation had been occurring).

As a result, I recommend that the Court dismiss Plaintiff's "free exercise" claim (against Defendants Nichols, Bryerwalters, Nuttall, Goord, and Bradford) in Plaintiff's First Cause of Action due to his failure to state a claim.

### 2. Retaliation Claim

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment.[69]  Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights.[70]  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.[71]  As the Second Circuit has noted,

---

[69]     *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).

[70]     *See Gill*, 389 F.3d at 381-383.

[71]     *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

> This is true for several reasons.  First, claims of retaliation are difficult
> to dispose of on the pleadings because they involve questions of intent
> and are therefore easily fabricated.  Second, prisoners' claims of
> retaliation pose a substantial risk of unwarranted judicial intrusion into
> matters of general prison administration.  This is so because virtually
> any adverse action taken against a prisoner by a prison official--even
> those otherwise not rising to the level of a constitutional violation--can
> be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a First Amendment claim of retaliation under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.[72]   Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.[73]

Here, Plaintiff alleges that all eight of the individual Defendants retaliated against him--in response to the expression of his religious beliefs and/or his filing of grievances or complaints-- when they (1) removed him from his assignment in the Mid-State C.F. Food Service Program in July of 2004, (2) denied him medical treatment for his Hepatitis C condition, and/or (3) harassed

---

[72]     *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir. 2001]).

[73]     *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

him by (a) transferring him from a "medium security" residence at Mid-State C.F. to a "minimum security" residence at Mid-State C.F. in July of 2004 (which precluded him from participating in the Food Service Program), (b) wrongfully denying him a transfer back to the Food Service Program, (c) wrongfully placing him in protective custody by filing false reports that Plaintiff's life was in danger (posed by other inmates) in August and September of 2004, and/or (d) transferring him to five different dormitories within a thirty-day period between August and September of 2004.[74]

I find that Plaintiff's retaliation claim fails as a matter of law.  As a threshold matter, because I have already concluded that Plaintiff did not have a First Amendment right to satisfy his ASAT Program-completion requirement by "expressing his religious views" or "reciting prayer[s]" during the ASAT Program meetings, I also conclude that he was not engaging in "protected conduct" (for purposes of a retaliation claim) when he allegedly expressed his religious beliefs during those group substance-abuse treatment meetings.[75]

However, even if Plaintiff had been engaging in "protected conduct," his claim would fail as a matter of law.  This is because, with regard to the two forms of "protected conduct" in which

---

[74]    (Dkt. No. 1, Part IV, "Claim # 1," "Claim # 2," "Claim # 4" [Plf.'s Compl.]; Dkt. No. 28, ¶¶ 10-16, 18, 21, 26 [Plf.'s Opp. Mem., alleging that he was transferred and placed in S.H.U. as a result of his exercising his First Amendment right to file grievances].)

[75]    *See Ahmad v. Ehrmann*, 339 F. Supp.2d 1134, 1139-1140 (D. Colo. 2004) (reasoning that, because inmate had no right to participate in group prayer in open areas of prison for purposes of a First Amendment "free exercise" claim, his attending such group prayer was not "protected activity" for purposes of First Amendment retaliation claim), *rev'd on other grounds*, 435 F.3d 1196 (10th Cir. 2006); *cf. Salahuddin v. Mead*, 95-CV-8581, 2002 WL 1968329, at *6, n.7 (S.D.N.Y. Aug. 26, 2002) (inmate's requests for individual religious counseling during hours designated for prison work program was not "protected activity" for purposes of First Amendment retaliation claim).

Plaintiff was allegedly engaging (i.e., the expression of religious beliefs and the filing of grievances or complaints), Plaintiff has not alleged specific facts indicating that the "protected conduct" *caused* the "adverse action" that was allegedly taken against him.  Specifically, I find that he has not done so for three reasons.[76]

First, Plaintiff has failed to allege specific facts indicating that the adverse action he experienced was caused by the protected conduct, as opposed to being caused by a *legitimate* reason.  With regard to the adverse action that Plaintiff allegedly experienced through his removal from his assignment in the Mid-State C.F. Food Service Program, Plaintiff's own allegations acknowledge that he was removed from the Food Service Program because (1) he had been assigned to the ASAT Program and (2) the ASAT Program, which was a residential program, required Plaintiff to live in a building that precluded Plaintiff from working in the Food Service Program.[77]  Thus, again, Plaintiff's allegations acknowledge that his removal from the

_____

[76]     (Dkt. No. 1, Part IV, "Claim # 1," "Claim # 2," "Claim # 4" [Plf.'s Compl.]; Dkt. No. 28, ¶¶ 10-16, 18, 21, 26 [Plf.'s Opp. Mem., alleging that he was transferred and placed in S.H.U. as a result of his exercising his First Amendment right to file grievances].)

[77]     Specifically, in Plaintiff's letter to Defendant Nichols dated May 10, 2004 (which is relied on and/or referenced in Plaintiff's Complaint and opposition papers, and provided in Plaintiff's opposition papers, and thus deemed part of Plaintiff's Complaint), Plaintiff states that (1) "[p]reviously, I was advised by my corrections counselor that I must participate in the A.S.A.T. program," and (2) "[t]he A.S.A.T. program in this facility does not permit me to participate in the Food Service program. . . .  Participation in the A.S.A.T. program[,] which[] is a module program[,] requires my removal from the Food Service program . . . ."  (Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl., referencing letter]; Dkt. No. 28, ¶ 10 [Plf.'s Opp. Mem., referencing letter, and attaching letter as exhibit].)  As a result, Plaintiff's own allegations assert that, before he had engaged in any of the protected conduct asserted in this action (i.e., protected conduct in the form of expressing his religious beliefs or filing a grievance or complaint), it had already been determined that Plaintiff was to participate in the ASAT Program.  Furthermore, Plaintiff's own allegations assert that, because the ASAT Program was a "module" (or residential) program, his participation in the ASAT Program necessitated his removal from the Food Service Program.

25

Food Service Program was caused by a legitimate reason (as opposed to Plaintiff's engagement in any protected conduct).

I note that I must reject Defendants' alternative argument that Plaintiff would have been removed from the Food Service Program anyway due to the fact that he was suspected of having stolen food from the mess hall. Because these factual allegations were not asserted in Plaintiff's Complaint or his opposition papers, it would not be appropriate to consider them on a motion to dismiss. In any event, the evidence on which Defendants rely (an e-mail message from Inmate Grievance Supervisor Daniel J. Lutz to Inmate Grievance Program Coordinator Chris Lindquist dated October 8, 2004) indicates that Plaintiff was first suspected of having stolen food from the mess hall only *after* he was removed from the mess hall (i.e., due to the fact that "the messhall has a lot [sic] of extra food since his departure").[78]

With regard to the adverse action that Plaintiff allegedly experienced through his denial of medical treatment for his Hepatitis C condition, Plaintiff's own allegations acknowledge that he was denied such medical treatment because, during the time in question, it was DOCS' policy that, before inmates with a history of substance abuse (such as Plaintiff) could receive medical treatment for their Hepatitis C condition, they had to participate in the ASAT Program (and Plaintiff did not do so).[79] Although Plaintiff's allegations do not describe the rationale for this

---

[78]     (Dkt. No. 27, Part 2, at 12 [Defs.' Mem. of Law]; Dkt. No. 27, Part 4, at 4 [Appx. A-1 to Quackenbush Aff., attaching copy of e-mail message].)

[79]     Specifically, in a memorandum from Deputy Commissioner Anthony J. Annucci and Defendant Wright to all superintendents dated February 10, 2006 (which is referenced and provided in Plaintiff's opposition papers, and thus deemed part of Plaintiff's Complaint), Mr. Annucci and Defendant Wright stated in pertinent part, "On October 13, 2005, a change was made to the Hepatitis C Primary Care Guideline. Under the old guideline, in certain circumstances an inmate who was otherwise medically suited to undergo treatment for Hepatitis

prior policy, the rationale was articulated by the Southern District of New York.  Specifically, the

Southern District stated,

> [DOCS' Guidelines requiring that, before an inmate may receive
> treatment for Hepatitis C, he must have completed, or be enrolled in,
> an ASAT Program] appear to be highly rationale in light of the fact
> that severe side effects, including death, may result from the treatment
> of the patient [with Interferon/Ribavirin therapy] . . . and that active
> substance abuse, including alcohol abuse, can cause life threatening
> consequences to a patient following the treatment regime.

*Graham v. Wright*, 01-CV-9613, 2003 U.S. Dist. LEXIS 16106, at *6, n.5 (S.D.N.Y. Sept. 12,

2003); *accord, Verley v. Goord*, 02-CV-1182, 2004 U.S. Dist. LEXIS 857, at *61 (S.D.N.Y. Jan.

22, 2004).  Thus, again, Plaintiff's allegations acknowledge that his denial of medical treatment

was caused by a legitimate reason (as opposed to Plaintiff's engagement in any protected

conduct).

   With regard to the adverse action that Plaintiff allegedly experienced through harassment

(i.e., through his repeated transfers to new residences, his inability to return to the Food Service

Program, and his placement in protective custody), Plaintiff's own allegations acknowledge that

the "adverse actions" taken against him were taken for legitimate reasons.  Specifically,

Plaintiff's allegations acknowledge that (1) he was transferred to a "minimum security" residence

at Mid-State C.F. on or about July 1, 2004, because of his placement in the ASAT Program (as

---

C[] might also have been required to enroll in an ASAT program as a condition of receiving
Hepatitis C treatment."  (Dkt. No. 28, ¶ 6 [Plf.'s Opp. Mem., referencing policy, and attaching
memorandum describing policy].)  In addition, in his opposition papers, Plaintiff referred to his
participation in the ASAT Program as being a "condition" of his receiving medical treatment for
his Hepatitis C condition.  (Dkt. No. 28, ¶ 5 [Plf.'s Opp. Mem.].)

opposed to Plaintiff's engagement in any protected conduct),[80] (2) he was placed in protective

custody in August and September of 2004 because he *agreed* to be placed in protective custody,[81]

and (3) three of the five dormitory transfers he allegedly experienced within a thirty-day period

between August and September of 2004 were either (a) because he had agreed to be placed in

protective custody, or (b) so that Plaintiff could complete the ASAT Program through self-

study.[82]   A somewhat closer question exists with regard to Plaintiff's allegations regarding the

---

[80]      (Dkt. No. 1, Part IV, "Claim # 4" [Plf.'s Compl., alleging that, on or about July 1,
2004, "plaintiff was transferred to the minimum facility" as a result of his assignment to the
ASAT Program]; Dkt. No. 28, ¶ 14 [Plf.'s Opp. Mem., alleging that Plaintiff's change of
program assignment from the Food Service Program to the ASAT Program occurred "AFTER
BEING TRASNFER[RED] TO MINIMUM SECURITY"]; Dkt. No. 28, ¶ 10 [Plf.'s Opp. Mem.,
referencing and attaching letter from Plaintiff to Defendant Nichols dated May 10, 2004, in
which Plaintiff recognized that the ASAT Program was "a module program" which required a
change of residence].)

[81]      (Dkt. No. 1, Part IV, "Claim # 4" [Plf.'s Compl, alleging that, on August 30,
2004, at "approximately 6:00 p.m., plaintiff was . . . told that his life was in danger by Sergeant
Miranda . . . [a]t which time[] Plaintiff signed a waiver for protective custody"; also alleging that,
on or about September 8, 2004, Plaintiff "was told by yet another Sergeant that: 'We have a
report that[] your life is in danger' [at which time] Plaintiff once again signed another protective
custody waiver"].)   I note that Plaintiff does not allege that either of the two sergeants who
informed him that his life was in danger was one of the Defendants in this action.   I also note that
Plaintiff has failed to allege any specific facts indicating that (1) his life was not indeed in danger
or (2) one of the Defendants in this action engaged in any nefarious conduct with regard to the
bringing about of Plaintiff's placement in voluntary protective custody.

[82]      (Dkt. No. 1, Part IV, "Claim # 4" [Plf.'s Compl., alleging that Plaintiff was
transferred from "27 West" to "the A.S.A.T. dorm in building #1" on August 31, 2004, because
he had been placed in voluntary protective custody; alleging that Plaintiff was transferred from
"the A.S.A.T. dorm in building #1" to "building # 2, C dormitory" on September 9, 2004,
because he had again been placed in voluntary protective custody; and alleging that Plaintiff was
transferred to "21 building (minimum security clearance)" on September 19, 2004 because a
"deal" had been worked out under which "plaintiff would be able to complete A.S.A.T. through
self-study"].)   I note that, with regard to the other two of the five transfers, Plaintiff does not
allege that either of those transfers was for an improper reason, or that any Defendant played any
role whatsoever in those transfers.   (Dkt. No. 1, Part IV, "Claim # 4" [Plf.'s Compl., alleging
simply that Plaintiff was transferred to "27 East" on August 29, 2004, and then to "27 West" on

reason he was denied a transfer back to the Food Service Program.  Documents relied on and/or referenced in Plaintiff's Complaint and/or Opposition Memorandum specifically state that he was subsequently denied a transfer back to the Food Service Program because he was no longer eligible for that program.[83]  In light of these specific factual assertions, I find that Plaintiff's contrary allegation that he was denied reentry to the Food Service Program because he engaged in "protected conduct" to be wholly conclusory.[84]

――――――――――――――

August 30, 2004].)

[83]     (Dkt. No. 28, ¶ 18 [Plf.'s Opp. Mem., referencing and attaching letter dated April 27, 2005, from Plaintiff to "Mr. Picente," the Mid-State C.F. Program Chairperson, requesting reassignment to the Mid-State C.F. Food Service Program, in response to which Plaintiff was advised on the same date as follows: "Be advised after discussion w/ SCC Phillips she has decided that you are not eligible for Mess Hall at this time.  Your program options will be discussed w/o 5/2/05."]; Dkt. No. 27, Part 4, at 3-4 [attaching Superintendent's decision dated 9/21/04, regarding Plaintiff's Grievance No. MS-13984-04, which was referenced in Paragraphs 15 and 26 of Plaintiff's Opposition Memorandum, and which states, "Senior Counselor Ms. P. reports that due to security reasons, this inmate will not be placed back into the mess hall"]; Dkt. No. 27, Part 4, at 17 [attaching Investigative Report dated 8/16/04, authored by Daniel J. Lutz, and regarding Plaintiff's Grievance No. MS-13984-04, which was referenced in Paragraphs 15 and 26 of Plaintiff's Opposition Memorandum, and which states, "Ms. Phillips reports that due to security reasons, this inmate will not be placed back in messhall."]; see also Dkt. No. 1, Part IV, "Claim # 4" [Plf.'s Compl, alleging that, on or about August 20, 2004, Defendant Phillips asserted that Plaintiff was denied reentry into the Food Service Program because of "facility needs," that, at an unspecified later date, Defendant Phillips asserted that Plaintiff was denied reentry into the Food Service Program because of "security reasons," and that, "most recently "Defendant Phillips asserted that Plaintiff was denied reentry into the Food Service Program because of "facility needs"].)  Because the October 8, 2004 e-mail message relied on by Defendants in their motion papers is not incorporated by Plaintiff in his Complaint or Opposition Memorandum, I do not rely on that e-mail message in deciding this motion to dismiss.  (Dkt. No. 28, Part 4, at 5-6 [attaching e-mail message dated 10/8/04 from Inmate Grievance Supervisor Daniel J. Lutz to IGP Coordinator Chris Linquist, reporting, "Spoke to Senior Counselor Ms. Phillips and inmate was suspected of stealing.  It could not be proven but the messhall has a lot of extra food since his departure."].)

[84]     (Dkt. No. 1, Part IV, "Claim # 4" [Plf.'s Compl, not asserting the existence of any specific facts that were based on personal knowledge and that would indicate that the denial of Plaintiff's reentry into the Food Service Program was not indeed due to the "facility needs" of

Second, Plaintiff has failed to allege facts indicating how certain Defendants even knew that Plaintiff had previously engaged in the protected conduct at issue. *See*, *e.g.*, *Croswell v. McCoy*, 2003 WL 962534, at *8 (N.D.N.Y. March 11, 2003) ("[E]ven if the court found that [there had been] . . . an adverse action, [plaintiff] has failed to show that there was a causal connection between the protected speech and the adverse action. There is nothing in the record which shows that [defendant] knew of the grievance filed the same day as that he [allegedly took the adverse action against plaintiff]. As previously mentioned, the grievance did not involve [defendant] . . . . Moreover, there would not have been any reason to have informed [defendant] about the grievance since he was not involved.").

In particular, Plaintiff has failed to allege any facts indicating why Defendants Phillips and Zick would have known about Plaintiff's prior expression of his religious beliefs and/or his sending of complaint letters to various other Defendants between May and July of 2004. For example, Plaintiff does not allege facts indicating how Defendants Phillips and Zick would have known about the letters Plaintiff allegedly sent to Defendants Nichols, Byerwalters, Nuttall, Goord, Bradford, and Wright.[85]  Nor does Plaintiff allege facts indicating how Defendants

---

Mid-State C.F. or due to "security reasons"].)  I note that, even if Plaintiff had alleged facts indicating that Defendant Phillips had acted dishonestly and maliciously in stating that Plaintiff was no longer eligible for the Food Service Program, that factual allegation would not state a claim of retaliation against any of the other Defendants, who were entitled to rely on Defendant Phillips' statement on its face. *See*, *e.g.*, *Cancel v. Mazzuca*, 205 F. Supp.2d 128, 145-146 (S.D.N.Y. 2002) (dismissing inmate's First Amendment retaliation claim against officials, who were entitled to believe statement by DOCS employee that inmate's claim was the result of a "mere misunderstanding, rather than a malicious attempt," because "[p]rison officials are afforded great latitude in running their facilities . . . and the federal courts should not lightly infer that any adverse action taken against a prisoner is retaliatory.").

[85]     (Dkt. No. 1, Part IV, "Claim # 1," "Claim # 2" [Plf.'s Compl., alleging that Plaintiff wrote complaint letters to Defendants Nichols, Byerwalters, Nuttal, Goord, and Wright,

Nichols, Bryerwalters, Nuttall, Goord, Bradford, or Wright would have known about the
grievance Plaintiff filed between August 8, 2004, and August 19, 2004, (Grievance No. MS-
13984-04) soon enough for them to retaliate against him by denying his return to the Food
Service Program and/or by moving him from dormitory to dormitory (which actions allegedly
took place between mid-August and the end of September 2004).[86]

Third, assuming Defendants did know about Plaintiff's prior complaint letters, Plaintiff
has failed to allege facts indicating why it took so long for certain Defendants to retaliate against
Plaintiff.[87]   For example, Plaintiff's letters complaining about the ASAT Program were sent to

_____

and received a response letter from Defendant Bradford; but not alleging any facts indicating that
either Defendants Zick or Phillips were aware of his complaints or grievances regarding the Mid-
State C.F. ASAT Program or Plaintiff's alleged inadequate medical care].)  Indeed, the only
indication that Defendant Phillips knew about Plaintiff's complaint letters from May through
July regarding the ASAT Program was that fact that Defendant Phillips was copied on Plaintiff's
letter to Defendant Nichols dated May 10, 2004.  (Dkt. No. 28 [Plf.'s Opp. Mem., attaching
Plaintiff's letter addressed to Defendant Nichols dated May 10, 2004].)  However, Plaintiff does
not allege any facts indicating that Defendant Phillips read the letter.

[86]      (Dkt. No. 27, Part 4, at 11-16 [attaching Plaintiff's letter to Inmate Grievance
Supervisor Daniel Lutz dated 8/9/04, stamped received 8/12/04, and treated as Grievance No.
MS-13984-04, which was dated as officially filed on 8/19/04, and which was referenced in
Paragraphs 15 and 26 of Plaintiff's Opposition Memorandum].)

[87]      (*Compare* Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl., alleging that, on or
about May 10, 2004, Plaintiff wrote to Defendant Nichols about his concerns regarding the
ASAT Program; alleging that, on or about May 25, 2004, Plaintiff wrote to Defendant
Byerwalters objecting to the ASAT Program and requesting reassignment in the Food Service
Program; alleging that, on or about June 4, 2004, Plaintiff wrote to Defendant Nuttall and "stated
his objections to the ASAT program format in this facility and, requested his assistance in
dealing with his program needs"; and alleging that, on or about July 2, 2004, Plaintiff wrote to
Defendant Goord seeking his help] *with* Dkt. No. 1, Part IV, "Claim # 4" [Plf.'s Compl., alleging
that, on or about August 20, 2004, Plaintiff appeared before the program committee for
assignment replacement and was denied reentry into the Food Service Program; and alleging that
Plaintiff was moved between five different dorms between August 29, 2004, and September 19,
2004].)

31

the following Defendants on or about the following dates: (1) a letter to Defendant Nichols on

May 10, 2004 (with a copy to Defendants Nuttall and Phillips); (2) a letter to Defendant

Bryerwalters on May 25, 2004; (3) a letter to Defendant Nuttall on June 4, 2004; and (4) a letter

to Defendant Goord on July 2, 2004 (which was read by Defendant Bradford).[88]   However,

Plaintiff alleges that he was not denied reentry into the Food Service Program until about August

20, 2004.[89]   Moreover, Plaintiff alleges that Defendants' alleged harassment of Plaintiff, by

moving him from dormitory to dormitory, took place between August 29, 2004, and September

19, 2004.[90]   If Defendants Nichols, Nuttall, Bryerwalters, Goord, and Bradford were going to

retaliate against Plaintiff for complaining (and, again, there are no factually specific allegations

indicating that is the case), why would they wait so long to do so?   While lags of time such as

those alleged in this case may not *alone* be sufficient to render Plaintiff's retaliation claim

insufficient as a matter of law, they are a reason to deem that retaliation claim insufficient when

considered in light of the many other inadequacies of Plaintiff's retaliation claim (described

earlier).[91]

     As a result, I recommend that the Court dismiss Plaintiff's retaliation claim (against all of

---

[88]    (*Id*.)

[89]    (*Id*.)

[90]    (*Id*.)

[91]    *See*, *e.g.*, *Rivera v. Goord*, 119 F. Supp. 2d 327, 341 (S.D.N.Y. 2000) (granting motion to dismiss plaintiff's retaliation claim against one of the defendants in part because his allegedly retaliatory actions occurred *four months* after the protected conduct); *Freeman v. Goord*, 02-CV-9033, 2005 U.S. Dist. LEXIS 32019, at *21-22 (S.D.N.Y. Dec. 7, 2005) ("A time lapse of four months . . ., standing alone, is insufficient to justify an inference of a causal connection.").

the individual Defendants) in his First Cause of Action due to his failure to state a claim.

**B.    Whether Plaintiff Has Stated a Substantive Due Process Claim Under the Fourteenth Amendment with Regard to His Access to a Religious ASAT Program**

I agree with Defendants that this claim should be dismissed with prejudice for the reason stated in their memorandum of law (i.e., that Plaintiff did not have a fundamental right to a taxpayer-funded substance abuse rehabilitation program much less the program of his choice, nor has Plaintiff alleged any facts demonstrating that Defendants have arbitrarily deprived him of access to a religion-based rehabilitation program).[92]

Plaintiff's arguments in opposition to dismissal of this claim are unpersuasive for a number of reasons.[93]   The most obvious of these reasons is that Plaintiff fails to address the first part of Defendants' two-part argument, which is that, before a plaintiff can be deprived of a right to substantive due process, he must possess such a right, and here Plaintiff possessed no such right.[94]   In fact, in his response, Plaintiff appears to be saying that he is not alleging that he had a substantive due process right to a religious ASAT Program but that Defendants harassed him in retaliation for his religious beliefs.[95]   If this is indeed Plaintiff's claim, then (1) his claim of retaliation has already been addressed in Part III.A.2. of this Report-Recommendation, and (2) Plaintiff can (and should) be deemed to have "consented" to Defendants' argument in favor of

---

[92]      (Dkt. No. 27, Part 2, 8-12 [Defs.' Mem. of Law].)

[93]      (Dkt. No. 28, ¶¶ 9-18.)

[94]      (*Compare* Dkt. No. 27, Part 2, 8-12 [Defs.' Mem. of Law] *with* Dkt. No. 28, ¶¶ 9-18.)

[95]      (Dkt. No. 28, ¶ 16 [alleging that Defendants have mischaracterized Plaintiff's claims, and that he "was not seeking a RELIGIOUS ASAT"].)

dismissal of Plaintiff's substantive due process claim, by failing to oppose that argument.[96]

Finally, I note that, in his opposition papers, Plaintiff raises the specter of a substantive due process claim based on the loss of good-time credits resulting from his failure to complete the secular ASAT Program.[97]   There are absolutely no factually specific allegations (other than an isolated conclusory allegation) that Plaintiff ever complained about a threatened loss of his good-time credits to anyone before filing suit.[98]   Nor does Plaintiff allege who threatened such a denial of good-time credits, when they made that threat, how they made that threat, where they made that threat, how many credits they threatened to deny Plaintiff, whether Plaintiff was ever actually denied any good-time credits, and (if so) how many credits he was denied.[99]   Under the circumstances, Plaintiff's claim is woefully bare, even when viewed under the liberal notice-pleading requirements of Fed. R. Civ. P. 8(a)(2) and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506

---

[96]        *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown."); *cf.* N.D.N.Y. L.R. 7.1(a) ("[A]ll . . . oppositions to motions require a memorandum of law . . . ."); *see, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]).

[97]        (Dkt. No. 28, ¶ 11 alleging, "At the time of this correspondence [to Defendant Nichols on May 10, 2004], Plaintiff was concerned with being denied prospective GOOD TIME CREDITS FOR PLAINTIFF'S REFUSAL TO PARTICIPATE IN THE SAME."].)

[98]        Plaintiff states that the issue of good-time credits was one of his "concerns" when he wrote a letter to Defendant Nichols on May 10, 2004; however, that letter contains no reference or allusion to good-time credits.  (*Compare* Dkt. No. 28, ¶ 11 *with* Dkt. No. 28, Exs. Thereto [attaching letter of 5/10/04].)

[99]        (Dkt. No. 28, ¶ 11.)

(2002).[100]  Furthermore, while I have not exhaustively researched the issue, I doubt that such a

claim, if properly stated, would even be legally cognizable.[101]

Finally, I note that Plaintiff does not allege that he was in fact denied access to a

substance abuse program that did contain a religious element; rather, he acknowledges that, upon

the recommendation of Defendant Nuttall in or around June of 2004, Plaintiff contacted the Mid-

State C.F.'s Volunteer Services Program Coordinator to enroll in a voluntary 12 self-help

program, which Plaintiff did.  (Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl.].)  Rather,

Plaintiff complains that his participation in the program is not credited in the calculation of his

release date.  (*Id*.)  As explained below, Plaintiff has no substantive due process right in the

granting of early release.  *See*, *infra*, Part III.D. of this Report-Recommendation.

As a result, I recommend that the Court dismiss Plaintiff's substantive due process claim

(against all of the individual Defendants) in his First Cause of Action due to Plaintiff's failure to

state a claim.

---

[100]    *See*, *supra*, Part II of this Report-Recommendation (describing notice-pleading standard).

[101]    *See Hall v. Unknown Named Agents of DOCS*, 825 F.2d 642, 644-647 (2d Cir. 1987) (reversing district court's grant of judgment for plaintiff on his due process claim based on his loss of good-time credits as a result of his failure to participate in a "diagnostic and treatment program"); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 123-124 (N.D.N.Y. 2004) (Hurd, J.) (granting defendants' motion to dismiss plaintiff's claim alleging that defendants violated his due process rights by denying him good-time credits for refusing to participate in a rehabilitative program that required participants to provide a full sexual history).

**C.     Whether Plaintiff Has Stated a Claim for Deliberate Indifference to a Serious Medical Need Under the Eighth Amendment**

Defendants recite the correct legal standard that governs Plaintiff's claim of deliberate indifference to a serious medical need under the Eighth Amendment.  Generally, to prevail on such a claim, Plaintiff must show two things: (1) that Plaintiff had a sufficiently serious medical need; and (2) that Defendant was deliberately indifferent to that serious medical need.[102]

Here, Defendants assume for the sake of argument that Plaintiff's Hepatitis C condition constitutes a "serious medical need" for purposes of the Eighth Amendment, and thus so will I.  The issue, rather, is whether Defendants Wright and Goord were deliberately indifferent to that serious medical need.

The main problem with Plaintiff's allegations of deliberate indifference is that Plaintiff has failed to sufficiently allege the personal involvement of either Defendant Goord or Defendant Wright in the Eighth Amendment violation.  As stated earlier in Part III.A.1. of this Report-Recommendation, a defendant's personal involvement in alleged unlawful conduct is a prerequisite for a finding of liability in a Section 1983 action.[103]  Supervisory officials (such as Defendants Goord and Wright) are personally involved in a constitutional violation only if: (1) they directly participated in that violation; (2) they failed to remedy that violation after learning of it through a report or appeal; (3) they created, or allowed to continue, a policy or custom under which the violation occurred; (4) they were grossly negligent in managing subordinates who caused the violation; or (5) they exhibited deliberate indifference to the rights of inmates by

---

[102]     *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

[103]     *Gill*, 824 F.2d at 196.

failing to act on information indicating that the violation was occurring.[104]

Here, Plaintiff alleges that Defendants Goord and Wright had information indicating that an Eighth Amendment violation was occurring because (1) Plaintiff had sent them letters about his lack of medical care, and (2) Plaintiff had filed grievances about his lack of medical care.[105] The problem is that, as alleged, these letters and grievances would not have put Defendants Goord and Wright on notice of the alleged Eighth Amendment violation. *See*, *e.g.*, *Chavis v. Kienert*, 03-CV-0039, 2005 WL 2452150, at *22-23 (N.D.N.Y. Sept. 30, 2005) (Scullin, C.J.) (dismissing inmate's Eighth Amendment medical-indifference claim against Dr. Lester Wright based on lack of personal involvement where Dr. Wright repeatedly ignored plaintiff's letters regarding medical complaints); *Morene v. Alves*, 03-CV-6485, 2006 WL 2094694, at *7 (S.D.N.Y. July 14, 2006) (dismissing inmate's Eighth Amendment medical-indifference claim against Dr. Lester Wright based on lack of personal involvement where plaintiff sent Dr. Wright four letters regarding medical complaints but did not specify the contents of those letters, for example, by providing the court with copies of them).

Specifically, Plaintiff alleges that, on or about July 2, 2004, he wrote a letter to Defendant Goord, "outlining both issues" that he had previously raised with various Defendants–i.e., (1) his alleged inability to express his religious views while in the ASAT Program, and (2) his removal from the Mid-State C.F. Food Service Program.[106]  Of course, the main problem with this letter as a form of notice to Defendant Goord is it did not mention or allude to a denial of medical care

---

[104]     *Colon*, 58 F.3d at 873; *Wright,* 21 F.3d at 501; *Williams*, 781 F.2d at 323-324.

[105]     (Dkt. No. 28, ¶¶ 4-5, 7, 8, 24 [Plf.'s Opp. Mem.].)

[106]     (Dkt. No. 1, Part IV, "Claim # 1" [Plf.'s Compl.].)

(or even that Plaintiff suffered from Hepatitis C).[107]  An additional problem is that Plaintiff does

not even allege that Defendant Goord read the letter; indeed, Plaintiff alleges that Defendant

Goord "never responded" to the letter.[108]

Plaintiff also alleges that, on or about July 20, 2004, he wrote to Defendant Wright about

Plaintiff's "condition."[109]  Specifically, Plaintiff alleges, "[P]laintiff wrote to [Defendant] Wright

. . . advising him [of] plaintiff's condition and[] predicament.  Essentially, plaintiff advised

defendant that[,] since plaintiff refused to participate in the A.S.A.T. program, the department

felt it was under no obligation to treat . . . [plaintiff].  To[]date, there has been no response

whatsoever."[110]  Again, there are two problems with this letter as a form of notice to Defendant

Wright: (1) as alleged, the letter is devoid of factual detail about any Eighth Amendment

violation (e.g., there are no specific factual allegations indicating the severity of Plaintiff's

Hepatitis C condition, how long he had had that condition, what "department" was denying him

medical care, who in that department was denying him that care, how they were denying him that

care, for what length of time they had denied him that care, and how the dangers of that lack of

care outweighed the dangers of giving Interferon/Ribavirin therapy to a patient with a substance-

abuse problem);[111] and (2) Plaintiff does not allege that Defendant Wright read the letter but that

---

[107]     (*Id.*)

[108]     (*Id.*)

[109]     (Dkt. No. 1, Part IV, "Claim # 2" [Plf.'s Compl.].)

[110]     (*Id.*)

[111]     (*Id.*)

Defendant Wright "ignored" the letter.[112]

Plaintiff also alleges that, on November 10, 2004, he wrote to Defendant Goord about Plaintiff's "situation."[113]  Specifically, Plaintiff alleges, "[P]laintiff wrote to [Defendant] Goord . . . advising him as well [of] plaintiff's situation[,] seeking his help.  However, to[]date, defendant has not responded . . . ."[114]  The precise same problems that plague Plaintiff's July 20, 2004, letter to Defendant Wright plague Plaintiff's November 10, 2004, letter to Defendant Goord: (1) an absence of factual detail about any Eighth Amendment violation; and (2) an absence of any facts indicating that Defendant Good read the letter.[115]

Finally, Plaintiff alleges that his grievances (including Grievance No. MS-14340-05) placed Defendants Good and Wright on notice of the alleged Eighth Amendment violation.[116] A review of the grievances provided by Plaintiff and Defendants (which were relied on and/or referenced in Plaintiff's Complaint and/or Opposition Memorandum) reveals that Plaintiff filed the following four grievances:

---

[112]    (*Id.*)

[113]    (Dkt. No. 1, Part IV, "Claim # 2" [Plf.'s Compl.].)

[114]    (*Id.*)

[115]    (*Id.*)

[116]    (Dkt. No. 28, ¶ 7 [Plf.'s Opp. Mem., asserting that "Plaintiff's grievance[s] specifically pointed out that plaintiff's right were being violated by the denial of medical treatment based upon plaintiff's refusal to participate in the ASAT program . . . ."].)

1. Grievance No. MS-13984-04 (dated August 19, 2004);[117]

2. Grievance No. MS-14340-05 (dated March 2, 2005);[118]

3. Grievance No. MS-14368-05 (dated March 16, 2005);[119] and

4. Grievance No. MS-14387-05 (dated March 30, 2005).[120]

The first and fourth grievances did not complain of a denial of medical care.[121]  Granted, the

second and third grievances did complain of a denial of medical care.[122]  However, two problems

exist with regard to treating these grievances as a form of notice to Defendants Goord and

Wright: (1) the grievances are not accompanied by any facts or factual allegations indicating that

Defendants Goord or Wright were put on notice of either the grievances or Plaintiff's appeals

therefrom; and (2) in any event, the grievances were filed more than three months *after* the

conclusion of the events complained of in this action, which was filed on December 1, 2004.[123]

Even if Plaintiff had sufficiently alleged the personal involvement of Defendants Wright

and Goord in the Eighth Amendment deprivation, his claim would fail as a matter of law because

---

[117]    (Dkt. No. 27, Part 4, at 11-16 [Quackenbush Decl., attaching Plaintiff's letter to Inmate Grievance Supervisor Daniel Lutz dated 8/9/04, stamped received 8/12/04, and treated as Grievance No. MS-13984-04, which was dated as officially filed on 8/19/04, and which was referenced in Paragraphs 15 and 26 of Plaintiff's Opposition Memorandum].)

[118]    (Dkt. No. 27, Part 5, at 11 [attachment to Quackenbush Decl.].)

[119]    (Dkt. No. 27, Part 6, at 3 [attachment to Quackenbush Decl.].)

[120]    (Dkt. No. 28, at 20 [attachment to Plf.'s Opp. Mem.].)

[121]    (Dkt. No. 27, Part 4, at 11-16 [attachment to Quackenbush Decl.]; Dkt. No. 28, at 20 [attachment to Plf.'s Opp. Mem.].)

[122]    (Dkt. No. 27, Part 5, at 11 [attachment to Quackenbush Decl.]; Dkt. No. 27, Part 6, at 3 [attachment to Quackenbush Decl.].)

[123]    (*Id.*; *see also* Dkt. No. 1, at 13 [Plf.'s Compl., dated 12/1/04].)

he has not alleged the sort of criminal recklessness necessary for liability under the Eighth

Amendment.[124]  Rather, *at most*, he has simply alleged negligence, which is not enough to make

a defendant liable to a plaintiff under the Eighth Amendment.[125]  I say "at most," because the

documents relied on and/or referenced in Plaintiff's Complaint and/or Opposition Memorandum

(and thus deemed part of Plaintiff's Complaint) indicate that, at the time, it was not deemed

medically appropriate for Plaintiff to engage in medical treatment for Hepatitis C without having

first enrolled in the ASAT Program.[126]

     As a result, I recommend that the Court dismiss Plaintiff's Third Cause of action (against

Defendants Wright and Goord) due to Plaintiff's failure to state a claim.

---

[124]   "'The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.'"  *Evering v. Rielly*, 98-CV-6718, 2001 U.S. Dist. LEXIS 15549, at *30 (S.D.N.Y. Sept. 28, 2001) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 [2d Cir. 1998]).

[125]   *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

[126]   *See*, *supra*, Part III.A.2. of this Report-Recommendation.

### D.     Whether Plaintiff Has Stated a Claim for Interference with His Right to Temporary Release Under the Fourteenth Amendment

I agree with Defendants that this claim should be dismissed with prejudice for the reason stated in their memorandum of law (i.e., that, as a matter of law, Plaintiff has no enforceable liberty interest in a temporary release under either the Due Process Clause or Equal Protection Clause of the Fourteenth Amendment).[127]  I reach the same conclusion that this claim should be dismissed with prejudice for an alternative reason: by conceding the merit of Defendants' argument,[128] Plaintiff may be (and should be) deemed to have "consented" to that argument and thus to dismissal of the claim at issue.[129]

I note that Plaintiff has attempted to voluntarily withdraw his claim without prejudice (i.e., under conditions in which he would be able to reassert the claim at a later time if he so chooses).[130]  This attempt is unavailing.  Rule 41 of the Federal Rules of Civil Procedure provides that where the defendants have answered a plaintiff's complaint (as they have done so here, see Dkt. No. 21), the plaintiff may dismiss a claim on his own (i.e., without an order of the court) only when the defendants have signed a stipulation of dismissal of that claim (which they have not done here).[131]

As a result, I recommend that the Court dismiss Plaintiff's Third Cause of Action (against

---

[127]     (Dkt. No. 27, Part 2, 14 [Defs.' Mem. of Law].)

[128]     (Dkt. No. 28, ¶ 20.)

[129]     *See*, *supra*, note 96 of this Report-Recommendation.

[130]     (Dkt. No. 28, ¶ 20 [stating, "Plaintiff will withdraw his Third Cause of Action at this time . . . ."].)

[131]     Fed. R. Civ. P. 41(a)(1).

42

Defendant Byerwalters) with prejudice due to Plaintiff's failure to state a claim.

### E.   Whether Plaintiff Has Stated a Claim for Harassment and/or Cruel and Unusual Prison Conditions Under the Eighth and/or Fourteenth Amendments

With respect to Plaintiff's claim of harassment, I agree with Defendants that this claim should be dismissed for the reason stated in their memorandum of law (i.e., that Plaintiff has not alleged any facts indicating that he suffered any physical injury as a result of the alleged harassment, which is required by the PLRA).[132]  I reach the same conclusion that this claim should be dismissed for an alternative reason: by failing to oppose Defendants' argument (and, indeed, by apparently conceding the merit of that argument),[133] Plaintiff may be (and should be) deemed to have "consented" to that argument and thus to dismissal of the claim at issue.[134]

With respect to Plaintiff's claim of cruel and unusual prison conditions under the Eighth Amendment, generally to prevail on such a claim a plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious*; and (2) that the defendants acted with *deliberate indifference* to the plaintiff's health or safety.[135]  Here, the prison conditions that Plaintiff allegedly experienced consisted of (1) being removed from his assignment in the Mid-State C.F. Food Service Program in June of 2004, and being subsequently denied a transfer back to the Food Service Program, (2) being transferred from a "medium

---

[132]   (Dkt. No. 27, Part 2, 14 [Defs.' Mem. of Law].)

[133]   (Dkt. No. 28, ¶¶ 10, 21.)

[134]   *See*, *supra*, note 96 of this Report-Recommendation.

[135]   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005).

security" part of Mid-State C.F. to a "minimum security" part of Mid-State C.F. in July of 2004

(which precluded him from participating in a rehabilitative program), (3) being placed in

voluntary protective custody following reports that his life was in danger (posed by other

inmates) in August and September of 2004, and/or (4) being transferred to five different

dormitories within a thirty-day period in August and September of 2004 in large part due to (a)

his placement in protective custody or (b) a possible opportunity for him to complete the ASAT

Program through self-study.[136]

As a matter of law, such conditions do not rise to the level of a *sufficiently serious*

deprivation for purposes of the Eighth Amendment–especially when one considers the dearth of

factual allegations indicating that any of the actions in question were unjustified (or that he

suffered any physical injury as a result of the transfers).[137]  Because Plaintiff has failed to allege

---

[136]      (Dkt. No. 1, Part IV, "Claim # 4" [Plf.'s Compl.].)

[137]      This conclusion is supported by numerous cases from within the Second Circuit.
*See*, *e.g.*, *Gatson v. Coughlin*, 679 F. Supp. 270, 273 (W.D.N.Y. 1988) (granting motion to
dismiss inmate's Eighth Amendment claim based on prison transfer that caused him to lose his
commissary job because "such transfers, even if proven to be for 'punitive' reasons, are neither
unusual nor 'cruel in the constitutional sense'"); *Persico v. Gunnell*, 560 F. Supp. 1128, 1137
(S.D.N.Y. 1983) (granting motion to dismiss inmate's Eighth Amendment claim based on
repeated "punitive" prison transfers because transfers are part of an inmate's sentence and do not
constitute "punishment"); *cf. Maguire v. Coughlin*, 901 F. Supp. 101, 104-106 (N.D.N.Y. 1995)
(McAvoy, C.J.) (not treating inmate's claim of repeated prison transfers as even actionable under
the Eighth Amendment but construing such a claim under the Fourteenth Amendment); *Arroyo v.
Coughlin*, 92-CV-0426, 1993 WL 117529, at *1 (W.D.N.Y. Apr. 13, 1993) (granting motion to
dismiss inmate's Eighth Amendment claim based on defendants' refusal to transfer inmate to
prison of his choice, because "plaintiff has no constitutional right not to be transferred from one
facility to another").  This conclusion is supported also by numerous cases from outside the
Second Circuit.  *See*, *e.g.*, *Sisbarro v. Warden,* 592 F.2d 1, 4 (1st Cir. 1979) ("While the appellant
has been subjected to a considerable number of possibly burdensome uprootings during his
prison term, such transfers are neither unusual nor 'cruel in the constitutional sense.'"); *Moore v.
Corr. Med. Serv.,* 05-CV-3525, 2006 WL 1478863, at *6-7 (D. N.J. May 26, 2006) (concluding
that inmate "failed to state [an Eighth Amendment] claim" with regard to his placement in

facts indicating the existence of the first element of this claim, I need not and do not reach the

issue of whether Plaintiff has alleged facts indicating the existence of the second element of this

claim (i.e., that Defendants acted with *deliberate indifference* to Plaintiff's health or safety).

As a result, I recommend that the Court dismiss Plaintiff's Fourth Cause of Action

(against Defendants Zick, Phillips, Byerwalters, and Nichols) due to Plaintiff's failure to state a

claim.

**F.     Whether Plaintiff Has Sufficiently Alleged the Personal Involvement of
         Defendants for Purposes of 42 U.S.C. § 1983**

I have already addressed the merits of this alternative argument, to varying degrees, in

some portions of this Report-Recommendation.[138]  To the extent that I have not addressed the

merits of this alternative argument, I conclude that I need not have to do so, because I have

already concluded that adequate reason exists to dismiss Plaintiff's Complaint.[139]

**G.     Whether Defendants Are Protected by Qualified Immunity As a Matter of
         Law**

Again, because I have already concluded that adequate reason exists to dismiss Plaintiff's

Complaint, I need not, and do not, reach the merits of Defendants' alternative argument that

Plaintiff's Complaint should be dismissed due to the fact that Defendants are protected by

---

protective custody, where he initially agreed to be placed in protective custody, then three days
later objected to that placement, but was not returned to general prison population until two
months later, pending completion of internal prison investigation into inmate's safety in general
prison population); *Doll v. Fairman*, 93-CV-5581, 1994 WL 46688, at *2 (N.D. Ill. Feb. 14,
1994) (granting motion to dismiss inmate's Eighth Amendment claim based on inmate's
"repeated[] transfer[s]" from one correctional facility to another because "prisoners do not have a
liberty interest in remaining in a particular institution").

[138]     *See*, *supra*, Parts III.A.1., III.A.2., and III.C. of this Report-Recommendation.

[139]     (Dkt. No. 27, Part 2, 3-8 [Defs.' Mem. of Law].)

qualified immunity as a matter of law.[140]

       **ACCORDINGLY**, it is

       **RECOMMENDED** that Defendants' motion for judgment on the pleadings (Dkt. No.

27) be **<u>GRANTED</u>**.

       Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days

within which to file written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d

Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28

U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: October 20, 2006
     Syracuse, New York

                                        George H. Lowe
                                        United States Magistrate Judge

---

[140]     (Dkt. No. 27, Part 2, 15 [Defs.' Mem. of Law].)